GILL SPERLEIN (CSN: 172887)
121Capp Street, Suite 200
San Francisco, California 94110
Telephone: (415)487-1211 X32
Facsimile: (415) 252-7747
legal@titanmedia.com

Attorney for Plaintiff
IO GROUP, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP, INC., a California corporation, | CASE NO:C 02-3711 RMW |
| Plaintiff, | APPLICATION FOR DEFAULT JUDGEMENT BY COURT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR DEFAULT JUDGEMENT BY COURT |
| vs. | |
| DAVID FOREST, an individual, FOREST ENTERPRISES, aka DAVID FOREST ENTERTAINMENT, a business entity type unknown, JACK RINELLA, an individual, and RINELLA SERVICES, a business entity type unknown, | |
| Defendants. | |

TABLE OF CONTENTS

APPLICATION………………………………………………………………………….…..1

MEMORANDUM OF POINTS AND AUTHORITIES………………………….…………2

    ISSUES TO BE DECIDED……………………………………………….………2

    STATEMENT OF FACTS……………………………………………….………..2

    ARGUMENT……………………………………………………………………...3

        Damages for Copyright Infringement……………………….………….…3

        Defendant Acted Willfully……………………………………………...6

        Damages for Unfair Competition………………………………………….8

        Damages for Unauthorized Use of a Photograph…………………………..9

        Sanctions………………………………………………………….………10

        Costs and Fees……………………………………………………………10

    CONCLUSION……………………………………………………………...11

Bill of Costs…………………………………………………………………….EXHIBIT A

Schedule of Fees……………………………………………………………..…EXHIBIT B

# TABLE OF AUTHORITIES

## CASES

*Danning v. Lavine*, 572 F2d 1386 (9th Cir. 1978)……………………………………….………3

*Nishimatsu Construction Co., Ltd. V. Houston Nat'l Bank*, 515 F2d 1200 (5th Cir. 1975)…..……3

*Perfect 10 v. Talisman Communications, Inc.,* 2000 U.S. Dist. LEXIS 4564 (C.D. CA. March 27, 2000)……………………………………………………………………………….…………7

*Playboy v. Webbworld*, 968 F. Supp. 1171 (E.D. Tex. 1997)……………………….…….…….5

## STATUTES

17 U.S.C. § 504…………………………………………………………………..………4, 6, 11

Cal. Bus. & Prof. Code § 17200 *et. seq*..………………………………………….……….8, 9, 11

Cal. Civ. Code § 3344 (a) and (g) …………………………………………….…...……9, 10, 11

**APPLICATION FOR DEFAULT JUDGEMENT BY COURT**

Upon the Court's instruction this application is submitted on the documents, without hearing.  By this application, the Memorandum of Points and Authorities Supporting the Application, the accompanying declarations and the pleadings in this action Plaintiff presents proof of the following matters:

1. Defendants David Forest and David Forest Enterprises has not responded to the complaint within the time permitted by law.  (Sperlein Decl. ¶¶ 2-6).

2. A clerk's default was entered herein on February 26, 2003.  See Request to Enter Default.

3. Defendant David Forest and David Forest Enterprises is not an infant or incompetent person or in military service or otherwise exempted under Soldiers' and Sailors' Civil Relief Act of 1940.  Sperlein Decl. ¶9.

4. Notice of this application has been served on Defendant.  See Certificate of Service filed herewith.

5. Plaintiff is entitled to judgment against said defendant on account of the claims pleaded in the complaint, to wit: Copyright Infringement, Unfair Competition, Unauthorized Use of a Photograph (Misappropriation of the Right of Publicity).

6. The amount of judgment sought is the sum of damages at $245,000.00 (minimal), sanctions at $2,557.00, costs at $150.00 and attorney fees at $1,799.50 for a total of $249,506.50 (minimal).  Support sited herein.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF APPLICATION FOR DEFAULT JUDGEMENT BY COURT**

Plaintiff Io Group, Inc. relies on the following points and authorities in support of its Application for Default Judgment by Court in the amount of $249,506.50, minimally:

**ISSUES TO BE DECIDED**

This memorandum supports Plaintiff's Application for Default Judgment by the Court. At an Order to Show Cause Hearing on March 14, 2003, the Court instructed Plaintiff to submit the application for decision on the papers without a hearing. The Clerk has entered Default against Defendant, so liability is no longer at issue. The remaining issues are the amount of damages for each of Plaintiff's claims and whether damages should be enhanced because Defendant acted willfully.

**STATEMENT OF FACTS**

Plaintiff Io Group, Inc. is in the business of producing adult videos and also maintains a subscription-based website. Defendants David Forest and David Forest Enterprises are apparently one and the same and will be referred to in the singular here forth. Defendant is in the business of acting as an unlicensed talent agent for various actors who appear in adult videos. Defendant also operates a subscription-based website where he displays numerous images of the actors he represents.

Defendant illegally published on his website www.forestmen.com twenty (20) images that belong to Plaintiff and for which Plaintiff holds valid Certificates of Registration. Plaintiff delivered six (6) of these images to Defendant with Terms of Use specifically stating they could

only be used on the Internet if they contained Plaintiff's watermark.  The document further stated that if Defendant used the images in a manner inconsistent with its terms, he would have to pay a <u>minimal</u> licensing fee of $2,500.00 per image.  In addition to the specific Terms of Use delivered with the images, Plaintiff had earlier discussions with Defendant as to how its images were to be property credited and protected.

  Nonetheless, Defendant proceeded to ignore the instructions and use the images in a manner inconsistent with Plaintiff's Terms of Use.  In addition, Defendant scanned other Plaintiff-copyrighted images from a magazine layout and posted those to his website as well.  He further violated Plaintiff's copyright by publishing another Plaintiff-copyrighted image in a print advertisement announcing a live appearance of the actor who was the subject of the images.

  Plaintiff sent a Cease and Desist letter to Defendant but the images remained accessible on the Internet until after this action was filed.

  As stated above, Defendant failed to answer the Complaint and the Clerk has subsequently entered default against him.

**ARGUMENT**

<u>DAMAGES FOR COPYRIGHT INFRINGEMENT</u>

  Plaintiff requests that the Court enter a judgment against Defendant for twenty (20) acts of copyright infringement at a minimum of $2,500 per act equaling a base statutory damage award of a minimum of $50,000, trebled to a minimum of $150,000.00 because Defendant acted willfully.

  As well-pleaded in the complaint and thereby admitted by Defendant by his default (see *Nishimatsu Construction Co., Ltd. V. Houston Nat'l Bank*, 515 F2d 1200,1206 (5th Cir. 1975); and *Danning v. Lavine*, 572 F2d 1386, 1388 (9th Cir. 1978)) David Forest illegally copied and published on the website www.forestmen.com a total of nineteen (19) images owned and

copyrighted by Io Group, Inc. and published 1 such image in a printed advertisement. (Complaint ¶¶20 and 24; Webb Decl. ¶¶9 and 14.)

Under Federal law infringers of copyrights are liable for either the copyright owner's actual damages and any additional profits of the infringer or statutory damages. The court may set statutory damages from $750 to $30,000 per work as it considers just. 17 USC § 504.

Because Defendant failed to defend this action, discovery has not occurred and it is therefore impossible for Plaintiff to determine the extent of actual damages with certainty.

For example, Plaintiff has no way of determining the amount of illicit profit Defendant has earned. Unknown factors affecting this determination include the number of website memberships resulting from the use of Plaintiff-owned photographs, the amount of income from bookings of the actor as a result of the illegal use of the images, income earned by Defendant from the appearance of the actor advertised by the use of a Plaintiff-owned photograph, and perhaps other factors Plaintiff never uncovered due to the absence of discovery.

Moreover, without discovery it is impossible to determine the extent of Plaintiff's loss. Because Defendant did not take any measures to protect the images from copying and downloading, the images have undoubtedly been further distributed throughout the World Wide Web, thereby diminishing the value of the images. By way of example, Plaintiff later discovered these same un-watermarked images on at least one other website. (Webb Decl. ¶11.)

Ordinarily the value of these images to Plaintiff lies in their uniqueness. Plaintiff licenses its images to magazine publishers or webmasters who seek new and unique images. Plaintiff sells memberships to its website to customers who are attracted to the website by images they have not viewed before. To the extent the images have been over-distributed they become less valuable. Licensees or customers who have seen the images in other locations (perhaps for less money or

even free) will not be interested in paying Plaintiff for the use of the photos or the opportunity to view them.  Since the images published by Defendant did not contain Plaintiff's watermark or copyright information, they do not even serve to increase brand recognition.  (Webb Decl. ¶10.)

Because of the increased exposure caused by Defendant's careless use of the images, they now have very little draw for new customers to Plaintiff's website and it would be nearly impossible to license the images to any webmaster or print publisher.  (Webb Decl. ¶12; Lahey Decl. ¶ 4.)

The only objective damage readily discernable is Plaintiff 's minimum licensing fee of $2,500.00 per image.  Defendant was aware this was Plaintiff's standard licensing fee.  Plaintiff sent six (6) of the illegally published images to Defendant with a Terms of Use Document outlining the conditions under which Defendant was authorized to use the images.  Those terms specifically prohibited the use of the images on the Internet unless they were properly watermarked.  The Terms of Use specifically state, "You agree that compensation for unauthorized use shall be no less than $2,500.00 per image."  (Emphasis added.)(Complaint Exhibit D; Webb Decl. ¶¶ 8 and 9; Mills Decl. ¶¶ 2 to 8.)  This information is also published on Plaintiff's website.  (Webb Decl. ¶ 3.)

The loss of the $2,500.00 licensing fee represents some, but not all of Plaintiff's lost profits, and does not represent any of Defendant's illicit gain.  Because of the difficulties associated with determining actual damages, Plaintiff elects to recover statutory damages.

For the reasons stated above, actual damages are certainly higher than just the lost licensing fee of $2,500.00 per image.  Therefore, Plaintiff submits that the minimum amount to set as a base statutory damage award for Plaintiff's copyright infringement claims is $2,500.00 per each of twenty (20) acts of infringement, or $50,000.00 in total.  Other Federal Courts have set base damages much higher.  *See Playboy v. Webbworld*, 968 F. Supp. 1171, 1176 (E.D. Tex.

1997) (Court awarded Playboy $5,000 per image in Internet case). It bears repeating that this is the <u>minimum</u> amount of damages and that actual damages may have been proven to be much higher had the parties engaged in discovery.

### DEFENDANT ACTED WILLFULLY

When a court finds an infringer acted willfully, the court may increase the award of statutory damages to a sum of not more than $150,000. 17 USC § 504(c)(1). As well-pleaded in the complaint and thereby admitted by Defendant by his default, Defendant knew his actions constituted copyright infringement and therefore his actions were willful. (Complaint ¶¶ 29 and 31.) The statutory damage award should be adjusted upwards accordingly.

On October 11, 1999 Plaintiff contacted Defendant by e-mail explaining that Plaintiff-owned images appearing on his website must be properly credited. This correspondence related to images <u>not</u> at issue in this action and occurred prior to the acts at issue in this action. (Webb Decl. ¶4 and Exhibit A attached thereto.)

On January 6, 2000 Defendant responded to Plaintiff by e-mail stating that he believed he was in compliance with copyright requirements. (Webb Decl. ¶5 and Exhibit B attached thereto.)

On January 7, 2000 Plaintiff sent Defendant a detailed e-mail message explaining why Defendant was not in compliance, the reasons Plaintiff required images to be credited in a certain manner, and a further request that Defendant rectify the situation. (Webb Decl. ¶6 and Exhibit C attached thereto.)

The issue was resolved and there were no further problems relating to those images. (Webb Decl. ¶ 7.) The communications between Plaintiff and Defendant concerning this earlier act of infringement certainly make clear that defendant was fully aware his actions constituted

copyright infringement.  Yet, within a year he engaged in substantially the same acts without any regard for the intellectual property rights of Plaintiff.

On July 11, 2000 Plaintiff sent two sets of images, one set watermarked for Internet usage and the other not watermarked for print use.  Plaintiff also sent a Terms of Use document that specifically described under what conditions Defendant could use the images and specifically stating that only the water marked images could be used on the Internet.  (Complaint ¶16 and Exhibits C and D attached thereto; Webb Decl. ¶ 8; Mills Decl. ¶¶ 2-8.)

On or about September 13, 2001 during a routine inspection of Internet sites, an employee of Plaintiff discovered nineteen Plaintiff copyrighted images of Chris Steel on the website www.forestmen.com.  A number of these were images delivered to Defendant with the Terms of Use document described above.  Defendant apparently had scanned the remaining images from a magazine layout.   (Webb Decl. ¶ 9.)

On September 21, 2001 Plaintiff sent by certified mail to Defendant a letter demanding he cease and desist the infringement of Plaintiff's copyrighted photographs.  A true and correct copy of the letter is attached to the Complaint as Exhibit G.  (Webb Decl. ¶ 13.)

In spite of that letter and several follow-up letters the images remained available on the website until as late as June 20, 2002.  Only after Defendant was served the Complaint did he finally remove the images from his website.  (Webb Decl. ¶ 15.)

Clearly, Defendant knew his actions constituted copyright infringement and therefore his actions are to be deemed willful.  Other Ninth Circuit Courts have not hesitated to impose heavy sanctions in similar situations.  *See Perfect 10 v. Talisman Communications, Inc.,* 2000 U.S. Dist. LEXIS 4564 (C.D. CA. March 27, 2000).  (Court awarded $100,000.00 per image in case of

willful infringement of adult photographs on the Internet). Plaintiff requests the Court treble the base statutory award for a minimum of $150,000.00.

## DAMAGES FOR UNFAIR COMPETITION

California Law defines an unfair business practice as, "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising …". Cal. Bus. & Prof. Code § 17200.

By systematically infringing on the intellectual property of others to create a website costing nothing to produce, Defendant unfairly competes with other website owners, such as Plaintiff, who must pay to produce content. These allegations were well-pleaded in the complaint and thereby admitted by Defendant by his default. (Complaint ¶¶ 34-37.)

Defendant and many other webmasters like him, make profits by stealing the intellectual property of others and selling it as if it were their own. Businesses like Plaintiff who operate within the law must make large expenditures to create or properly license content. Plaintiff spends approximately $41,738.00 per month in production costs. (Lahey Decl. ¶ 5.) Plaintiff must then recoup those expenditures and earn a profit by charging the appropriate fees to access the content. (Lahey Decl. ¶ 6.) It is impossible for Plaintiff to set competitive rates when competing with unscrupulous business like Defendant who pay nothing for their content. (Lahey Decl. ¶ 7.) This problem is rampant on the Internet. (Lahey Decl. ¶ 8.)

Plaintiff has discovered a direct correlation between the closing of sites illegally using its images and increased subscriptions to its website. (Lahey Decl. ¶ 9.)

Plaintiff believes that at trial it would have been able to prove Defendants did not license or acquire permission to use any of the hundreds of images appearing on their website. Each of those violations would have warranted a separate and distinct damage award because each time

Defendants compete with Plaintiff by using illegally obtained images whether they belong to Plaintiff or someone else, they engage in an unfair business practice that causes Plaintiff harm. Nonetheless, Plaintiff only demands damages for those images that it is certain were illegally obtained - namely those images belonging to Plaintiff and being used by Defendant without permission.

The statute provides that damages may be awarded up to $2,500 for each violation.  Cal. Bus. & Prof. Code § 17206(a).  Defendant engaged in a minimum of twenty (20) violations thereby warranting a minimum damage award of $50,000.00 for Unfair Business Competition.

Since Cal. Bus. & Prof. Code § 17205 states that remedies or penalties provided for under the chapter are cumulative to each other and the remedies or penalties available under all other laws of California, Plaintiff submits that this amount should be included in the judgment in addition to any other damage awards.  Cal. Bus. & Prof. Code § 17205.

## DAMAGES FOR UNAUTHORIZED USE OF PHOTOGRAPH

Cal Law provides that, "[a]ny person who knowingly uses another's…photograph… in any manner, on or in products, merchandise, or goods or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent…shall be liable for any damages…equal to the greater of seven hundred fifty dollars ($750) or the actual damages…Cal Civ. Code § 3344(a).

As well-pleaded in the Complaint and thereby admitted by Defendants by their default, and as further supported by Exhibit F to the Complaint, the actor appearing in each of the photographs assigned his rights of publicity to Plaintiff.  (Lahey Decl. ¶¶ 10 and 11.)

Defendant did not have permission from Plaintiff to use the images in the manner they were used (Webb Decl ¶ 16; Lahey Decl. ¶12.) and is therefore liable for unauthorized use of a photograph.

Defendant published the images on a website for which he charged monthly membership fees and thereby used the images for commercial gain. (Webb Decl. ¶ 17.)

Since the factual record has not been developed sufficiently to determine actual damages, Plaintiff request the court assess damages at or above the minimum amount of $750 per each unauthorized use as provided for at Cal. Civ. Code § 3344(a).

For the same reasons set forth above relating to copyright infringement, Defendant's unauthorized use of the photographs was willful and therefore Plaintiff requests punitive damages as provided for under Cal. Civ. Code § 3344(a) and respectfully suggests that a trebling of the damages would be appropriate. Plaintiff therefore requests a minimum damage award of $45,000.00 for defendant's twenty (20) willful acts of unauthorized use of a photograph.

Since Cal. Civ. Code § 3344(g) states that remedies provided for under the section are cumulative, Plaintiff requests that this amount be included in the judgment in addition to any other damage awards.

### SANCTIONS

In an order issued by the Court on November 26, 2003 Defendant David Forest was instructed to show cause why he should not be required to pay $2,557.00 in sanctions for failing to waive service of process. See Order Denying Defendant's Motion to Dismiss for Improper Venue and Insufficient Service of Process; Order to Show Cause as to Why Defendant Should Not Bear Costs of Service of Process.

Defendant has failed to properly respond to the Court's Order to Show Cause.  Therefore, the  $2,557.00 sanctions should be included in the judgment to be entered against Defendants.

## COSTS AND FEES

Plaintiff paid $150.00 to file the Complaint in this action as indicated in the Bill of Costs attached as Exhibit A.  (Sperlein Decl. ¶10.)

Plaintiff paid $1,799.50 in fees to outside counsel relating to this case as outlined in the Schedule of Fees attached as Exhibit B.  (Sperlein Decl. ¶11.)  The attorney to whom these fees were paid, Kate Dyer, is a partner of the litigation firm of Clarence Snell and Dyer, graduated from Hastings Law School and has nearly ten years of litigation experience.  Her regular hourly rate is $295.00.  (Sperlein Decl. ¶12.)

Since Plaintiff has been successful in its claims it should be awarded Costs and Fees as provided for by 17 U.S.C. § 504, California Bus. & Prof. Code § 17200 et. seq., and Cal. Civ. Code § 3344(a).

None of these costs or fees is duplicative of the fees included in Plaintiff's request for sanctions as outlined above.  (Sperlein Decl. ¶13.)

## CONCLUSION

The Court should enter a Default judgment against Defendant for no less that $249,506.50.

Dated: *March 21, 2003*            */s/ Gill Sperlein*
                                    GILL SPERLEIN
                                    GENERAL COUNSEL, IO GROUP, INC.
                                    Attorney for Plaintiff Io, Group, Inc.